**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

WILLIE FOSTER, JR.,

        Plaintiff,

vs.                                  Case No. 6:11-cv-1234-J-37GJK

SELECT MEDICAL
CORPORATION, INC.,

        Defendant.

---

**ORDER**

This cause is before the Court on the following:

1) Defendant's Motion to Dismiss Counts I, II, III, IV, V, VI, VII, and VIII of Plaintiff's Amended Complaint (Doc. No. 17), filed on January 31, 2012; and

2) Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss Counts I, II, III, IV, V, VI, VII, and VIII of Plaintiff's Complaint (Doc. No. 23), filed on February 7, 2012.[1]

**BACKGROUND**

**A.    Procedural History**

Plaintiff filed a Complaint and Motion for Leave to Proceed *In Forma Pauperis* in this Court on July 26, 2011. (Doc. Nos. 1, 2.) Magistrate Judge Gregory J. Kelly denied the Motion for Leave to Proceed IFP on August 4, 2011, and directed Plaintiff to file an amended complaint within twenty one (21) days from the date of that order, along with a

---

[1] The Court construes Mr. Foster's "motion" as a response to Defendant's Motion to Dismiss. Mr. Foster is proceeding *pro se* in this matter.

renewed motion to proceed IFP (or to pay the filing fee). (Doc. No. 8.) On January 1, 2012, Judge Gregory A. Presnell dismissed Plaintiff's case for failure to prosecute. (Doc. No. 11.)

On January 9, 2012, Plaintiff filed a Motion for Relief from Judgment or Order. (Doc. No. 12.) He contended that he filed "another complaint," which was ultimately filed with a new case number (Case No. 6:11-cv-1386-Orl-36DAB). On January 27, 2012, Magistrate Judge David A. Baker entered an order in Case No. 6:11-cv-1386-Orl-36DAB, in which he explained:

> Plaintiff, appearing *pro se*, has filed a previous Complaint regarding this matter: Case No. 6:11-cv-1234-31-GJK. In that action, on August 4, 2011, the Court directed Plaintiff to file an Amended Complaint (Doc. No. 8). According to Plaintiff (Doc. No. 12 in the earlier case), he prepared and tendered his newly amended complaint on August 18, 2011, as directed, but this complaint did not have a case number on it and was therefore apparently filed as a new complaint in the instant action (Doc. No. 1). In the meantime, the Court dismissed the earlier case for failure to timely file the amended pleading (Doc. No. 11–earlier case). As it is apparent that Plaintiff did not intend to file a new action and the instant matter was opened in error, the Clerk is directed to close this case, and to file Plaintiff's documents in the previous docket (Case No. 6: 11cv1234-31GJK).

(Doc. No. 26.)

The most recent version of Plaintiff's Complaint, to which the Motion to Dismiss (Doc. No. 17) pertains, was filed on the docket corresponding to the above styled case on January 31, 2012. (*See* Doc. No. 16.) The Complaint asserts eight counts against Defendant, including: 1) Count I - Title VII Discrimination; 2) Count II - Retaliation - Interference; 3) Count III - Breach of Implied Contract; 4) Count IV - Defamation; 5) Count V - Intentional Infliction of Emotional Distress; 6) Count VI - Negligent Training and Supervision; 7) Count VII - Negligent Retention; and 8) Count VIII - Retaliatory Discharge. (*Id.*)

On February 1, 2012, Judge Presnell granted Plaintiff's Motion for Relief from Judgment (Doc. No. 12), and instructed Plaintiff to respond to Defendant's Motion to Dismiss (Doc. No. 17), which was filed on January 31, 2012, by February 17, 2012. (Doc. No. 21.) Plaintiff filed his Response to Defendant's Motion to Dismiss on February 7, 2012. (Doc. No. 23.)

**B.     Factual Allegations**

Plaintiff is a fifty-five-year-old, African American male, "who was employed by [Defendant] as a Floor Technician on or about July 14, 2008, earning $10.00 per hour." (Doc. No. 16, ¶ 9.) He maintains that Defendant and its agents "acted with malice and with reckless disregard for Plaintiff's protected rights." (*Id.* at ¶ 5.)

Plaintiff contends his alleged persecution began on July 11, 2008, when he and his fiancé first toured Defendant's facility. (*Id.* at ¶ 13.) During the tour, they entered the office of the "Housekeeping/Environmental Service" supervisor, who "professed her strong Christian views and held her bible," which she always kept on her desk. (*Id.* at ¶ 14.) Plaintiff, a Buddhist, felt "somewhat uncomfortable," but "did not profess his faith for fear of not being hired." (*Id.* at ¶ 15.) At some point thereafter, Plaintiff was ultimately hired, and even received a "raise in hourly wage" on February 9, 2009. (*Id.* at ¶ 17.)

On February 14, 2009, Plaintiff informed his direct supervisor of a "health safety violation" that he encountered while he was removing trash from the building earlier that morning. (*Id.* at ¶ 17.) He believed that he may have "been infected by the exposure." (*Id.*) He asked to file a worker's compensation claim, but was denied. (*Id.*)[2]  On February

---

[2] This statement appears to conflict with Plaintiff's Exhibit C9, which is a copy of his "Workers' Compensation Drug Card." (Doc. No. 16, p. 12.)

26, 2009, Plaintiff received "accelerated discipline action." (*Id.* at ¶ 18.)  On March 12, 2009, Plaintiff filed a complaint with Defendant's CEO and "human relations" department for "unfair labor practices and safety violations." (*Id.* at ¶ 19.)  Thereafter, he was "subjected to disparate treatment, sexist and racist insults by supervisors," which his co-workers witnessed. (*Id.* at ¶ 20.)

On April 17, 2009, Plaintiff informed the facility manager that he was going to report "the matter" to Defendant's "corporate office." (*Id.* at ¶ 23.)  Plaintiff later had a telephone conference with the "regional human relations director." (*Id.* at ¶ 24.)  On April 21, 2009, the director "arrived in town from the corporate office" to meet with Plaintiff, and wanted to see pictures Plaintiff took of the safety violations. (*Id.* at ¶ 25.)  On April 29, 2009, Plaintiff "was instructed to meet again with the regional human relation director via telephone conference." (*Id.* at ¶ 25.)  He requested to have a witness present or to record the conversation, but was denied. (*Id.*)  When he returned to his "scheduled assignment" after the meeting, he was approached by the facility manager and asked to leave the building. (*Id.*)  When Plaintiff asked if he was being terminated, the facility manager acknowledged that he was. (*Id.*)  Plaintiff was not offered any explanation about his termination.

Plaintiff asserts that he was the "only male in his department and forced to perform jobs outside the scope of his employment and training and discriminatory job assignments and workload."[3]  (*Id.* at ¶ 21.)  Further, he alleges he was "subjected to pray meeting in supervisors office and instructed to pray with other employees in her office on scheduled lunch break." (*Id.* at ¶ 22.)  Additionally, he contends there were "crucifixes or crosses placed throughout the office." (*Id.*)

---

[3] The Court notes that it quotes Plaintiff's assertions verbatim throughout this Order.

4

**APPLICABLE STANDARD**S

A *pro se* plaintiff "is subject to the relevant law and rules of the court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts " 'state a claim to relief that is plausible on its face.' " *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 1950 (citation omitted).  As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).  On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of a defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible.  *Id.* at 1950-51.

## DISCUSSION

### A.    Count I - Title VII Discrimination

In Count I, Plaintiff "asserts both a[] disparate treatment discrimination claim and a hostile work environment claim."  (Doc. No. 1, ¶ 28.)

#### 1.    Disparate Treatment

The Eleventh Circuit addressed the application of the pleading standard established in *Iqbal,* 129 S.Ct. 1937, and *Twombly,* 550 U.S. 544, to claims for employment discrimination in *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935 (11th Cir. 2011).  The court explained:

> A complaint in an employment discrimination case need not contain specific facts establishing a prima facie case under the evidentiary framework for such cases to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). But complaints alleging discrimination still must meet the "plausibility standard" of *Twombly* and *Iqbal. See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (noting that to state a hostile work environment claim post- *Iqbal*, employee "was required to allege" five prima

>facie elements). So, Henderson's complaint had to contain "sufficient factual matter" to support a reasonable inference that Chase engaged in racial discrimination against Henderson in relation to her loan. She could have met this standard by alleging facts showing that similarly-situated loan applicants outside her racial class were offered more favorable loan terms. *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (explaining, in the employment context, that a plaintiff fails to establish a prima facie discrimination case if she fails to show that she was treated less favorably than a similarly-situated person outside her protected class).

*Id.* at 937-38.

In order to establish a prima facie case of discrimination, a plaintiff may provide either direct or circumstantial evidence. *See Maynard*, 342 F.3d at 1288. "If by the latter, the plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Ashmore v. F.A.A.*, No. 11–CV–60272, 2011 WL 3915752, at *4 (S.D. Fla. Sept. 2, 2011) (citations omitted).

Plaintiff's Complaint does not contain "sufficient factual matter" to allege the necessary elements for disparate treatment, and the documents attached to the Complaint do not clearly support a disparate treatment claim. For example, in a letter to Defendant's CEO dated March 9, 2009, Plaintiff states, "[I]t appears to be relevant persons, patterns, and practices in all the cases in relation to Freddie's,[4] claims, and various patterns of disparate treatment toward person[s] in these positions of housekeepers and floor tech position since my tenure." (Doc. No. 16, Ex. C2.) There is no evidence presented that "Freddie" or the other "Floor Techs" are African American or if they were treated differently

---

[4] Although Plaintiff does not explain who "Freddie" is, it appears that he either was a former floor technician or worked with Plaintiff as a floor technician.

7

because they were members of a protected class. These assertions also suggest that all "Floor Techs" and "Housekeepers" were treated unfavorably, and that Plaintiff was not singled out.

Further, nothing in Plaintiff's Complaint, aside from his conclusory allegations, raises a "plausible inference" that Defendant discriminated against him based on his race, religion, or gender. In fact, Plaintiff's primary contention appears to be that he was improperly terminated after he complained to his supervisors about safety violations. (*See e.g.,* Doc. No. 16, ¶ 25 (explaining that he met with the regional human relations manager who wanted to see pictures of the "safety violation" and was fired shortly thereafter with no explanation).) As the Complaint stands, Plaintiff fails to identify any "specific non-minority employees . . . who were treated differently." *Ashmore*, 2011 WL 3915752, at *4. **Therefore, he has failed to establish a "prima facie discrimination case."** *Maynard,* 342, F.3d at 1289.

### 2.   Hostile Work Environment

To establish a hostile work environment claim, Plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (alterations omitted). "The determination of whether conduct was sufficiently severe or pervasive to alter a plaintiff's terms or conditions of employment involves a subjective

and an objective component." *Freese v. Wuesthoff Health Sys., Inc.,* No. 6:06-cv-175-Orl-31JGG, 2006 WL 1382111, at *5 (M.D. Fla. May 19, 2006) (citations omitted).

The Court assumes that Plaintiff "subjectively" found his work environment to be abusive. To determine whether his work environment was "objectively" abusive, the Court must look to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman,* 526 F.3d 1370, 1379 (11th Cir. 2008) (internal quotation marks and citations omitted).

It is undisputed that Plaintiff belongs to a protected group. (*See* Doc. No. 16, ¶ 9.) The Complaint includes allegations that (1) "he was subjected to a hostile work environment based on racist and sexist slurs by supervisors"; (2) "he was subjected to unwelcome harassment" and "the harassment was based on his race, sex, religion and retaliation"; (3) "Defendant in this case, cultivated an hostile environment in which racist/sexist insults reached a level of unreasonable, interfering with the Plaintiff's work and creating an intimidating, hostile, offensive environment as measured from the perspective of a reasonable person of victim's gender"; and (4) "the harassment was severe enough to affect a term, condition, or privilege of employment." (Doc. No. 16, ¶¶ 16, 20, 28.) Additionally, in a letter Plaintiff wrote to Defendant's "CEO" on March 14, 2009, he told her that his supervisor, "Mary," made blatantly disparaging remarks and compared him to other floor technicians while they were in the presence of his co-workers. (Doc. No. 16, Ex. C3.) She allegedly made remarks regarding his earrings, sexuality, and the color of the clothes he wears.

Most of these allegations are nothing more than conclusory allegations, but even Plaintiff's fact based assertions, such as those regarding his supervisor's statements are insufficient to show that he was harassed because he is African American, male, or because he does not share his supervisor's religious beliefs.  Indeed, Plaintiff does not even allege that his supervisor knew he was Buddhist or that she knew or should have known that her religious expression in the workplace made him uncomfortable. Additionally, remarks about his "earrings, sexuality, and the color of the clothes he wears" do not constitute the type of discriminatory statements that give rise to a cause of action for a hostile work environment.  "Mere utterances of epithets engendering offensive feelings in an employee are not sufficient" to allege a hostile work environment claim. *Freese,* 2006 WL 1382111 at *5.

Moreover, as addressed above, in the letter to Defendant's CEO dated March 9, 2009, Plaintiff's concerns indicated that he was not singled out based on his race, religion, or because he was a male.  If Plaintiff was mistreated because he was a "Floor Tech," rather than because of his membership in a protected class, he will not be able to prove the third requirement for a "hostile work environment" claim (i.e., that the harassment was based on his membership in the protected group).  Plaintiff will need to more clearly and concisely articulate the grounds on which he bases his "hostile work environment" claims.

### B.     Count II - Retaliation - Interference[5]

To establish a prima facie case of retaliation under Title VII, a plaintiff must show

---

[5] It is unclear whether Plaintiff intended to allege violations of 42 U.S.C. § 1981 as well.  Regardless, the Eleventh Circuit has explained that the analytical framework are the same for both Title VII and §1981 retaliation claims.  *See Miller v. Kenworth of Dothan,* 277 F.3d 1269, 1275 (11th Cir. 2002).

"(1) that [he] engaged in statutorily protected [activity]; (2) that [he] suffered a[ ] [materially] adverse [ ] action; and (3) that there is some causal relation between the two events." *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 566 (11th Cir. 2010) (alteration in original)(citing *McCann*, 526 F.3d at 1375 (laying out what constitutes a prima facie case of retaliation); *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (clarifying what types of "actions" establish a prima facie case of retaliation under Title VII)).

In his Complaint, Plaintiff alleges that he filed a "timely charge of discrimination with City of Orlando Human Relation Department, Equal Employment Opportunity Commission [("EEOC")], Occupational Heath and Safety Administration [("OSHA")], participated in an employment discrimination proceeding and opposed the Defendant's unlawful practices." (Doc. No. 16, p. 7.) He further alleges that he filed a complaint "with Defendant" for "intolerable to a reasonable person, unlawful safety compensation claim, adverse and malicious." (*Id.*) Elsewhere in the Complaint, he appears to allege that he was terminated without explanation immediately after he spoke to the CEO about safety violations and/or after he filed complaint with the EEOC or OSHA. Given that Plaintiff fails to allege his claims using short, plain statements, the Court cannot determine whether Plaintiff has sufficiently met the elements to state a *prima facie* case for retaliation.

Further, the Complaint lacks information that is crucial to Plaintiff's retaliation claim. For example, it is unclear whether Plaintiff filed a complaint with the EEOC prior to his termination. Although he attached the EEOC "Dismissal and Notice of Rights" to the Complaint, it does not contain the date on which he filed the initial complaint. (*See* Doc. No. 16, Ex. A.) The Notice is dated June 9, 2011, nearly two years after Plaintiff's alleged termination on April 22, 2009. (Doc. No. 16, ¶ 25.) Plaintiff will need to establish that he

filed his EEOC complaint *prior* to April 22, 2009 if he intends for this filing to serve as the basis for a retaliation claim.  *See Valdes v. Miami-Dade Coll.*, No. 11-14977, 2012 WL 987533, at *3 (11th Cir. Mar. 26, 2011) (citing *McCann*, 526 F.3d at 1376) (explaining that to establish the "causal connection," component of a retaliation cause of action, the plaintiff must show that the employer making the adverse employment action was aware of the protected conduct, such as filing a complaint with the EEOC).  In short, Plaintiff needs to ensure that he provides facts sufficient to support each element of his retaliation claim.

### C.     Count III - Breach of Implied Contract

Count III of Plaintiff's Amended Complaint asserts a breach of implied contract claim. To support this claim, Plaintiff states:

> Defendant engaged in unlawful employment practices and breached its own implied contract. Defendant implied in its company handbook that all employees would be treated equally and Plaintiff was treated in a discriminatory manner unlike, similarly situated persons of another class.

(Doc. No. 16, ¶ 40.)

Both Florida courts and federal courts interpreting Florida law have recognized that:

> It is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract.

*Freese,* 2006 WL 1382111, at *8 (quoting *Quaker Oats Co. v. Jewell*, 818 So. 2d 574, 576-77 (Fla. 5th DCA 2002) (citations omitted); *see also Caster v. Hennessey*, 727 F.2d 1075, 1077 (11th Cir. 1984); *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1352 (S.D. Fla. 2004)*; Rumbel v. Suggs*, 908 F. Supp. 901, 904 (M.D. Fla. 1995)).  At the very least, an "enforceable employment contract requires 'the parties must have a definite and

distinct intention, common to both, and without doubt or difference.' " *Sleit v. Ricoh Corp.*, No. 2008 WL 4826113, at *4 n.7 (M.D. Fla. Nov. 4, 2008) (citing *In re Paxson Elec. Co.*, 248 B.R. 451 (M.D. Fla. 2000)).

Plaintiff attached to the Complaint a copy of his "offer letter," which he signed prior to beginning his employment. (Doc. No. 16, Ex. C.) The letter contains a provision stating:

> As per our corporate Human Resources Policies, Select Medical is an equal opportunity employer and employment is at will. Neither the employee nor the Company is bound to continue the employment relationship if either chooses, at its will, to end the relationship at any time.

(*Id.*) Plaintiff did not provide any portions of the "Human Resources Policies" with the Complaint, nor did he allege that it contains any "specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract." *Freese,* 2006 WL 1382111, at *8. Thus, the allegations in the Complaint are insufficient to state a viable cause of action under Florida law. *See id.*

### D.     Count IV - Defamation

Like all of Plaintiff's claims, to survive a motion to dismiss, the elements of defamation must be plead to the *Iqbal-Twombly* standard. *Ward v. Casual Rest. Concepts, Inc.*, No. 8:10-cv-2640, 2011 WL 2600511, at *6 (M.D. Fla. June 29, 2011). The elements include: (1) publication of the statement; (2) falsity; (3) the actor must act at least negligently with regard to the statement's falsity; (4) the plaintiff must suffer actual damages; and (5) statement must be defamatory. *Id.* (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

Plaintiff alleges that Defendant "presented false testimony and evidence about the reason for his termination to third parties," which damaged his "good reputation." (Doc. No.

13

16, ¶ 44.) He maintains that Defendant published "false information" to "OSHA, EEOC, and the State of Florida Unemployment Claims Commission," including statements that he harassed a coworker, walked off the job, and violated the attendance policy. (*Id.*) Additionally, he claims that the false statements cause "delay in unemployment compensation," "disharmony distress in his family," and other forms of injury.

Although it is not entirely clear from the Complaint, Plaintiff's defamation claims may be barred if Defendant made the alleged defamatory statements pursuant to an EEOC or OSHA investigation. Such statements would be "absolutely privileged," and cannot serve as the basis for a defamation claim. *See Gandy v. Trans World Comp. Tech. Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001) (citations omitted) ("An EEOC investigation is a quasi-judicial proceeding. . . . Florida recognizes that defamatory words published during the course of a judicial or quasi-judicial proceeding are absolutely privileged if they are connected with, or relevant or material to, the cause at hand or subject of inquiry."); *see also Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1277 (11th Cir. 2004) (citations omitted) (internal quotation marks omitted) (explaining that the litigation privilege may be considered in resolving a motion to dismiss if "the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action."). If Plaintiff cannot, in good faith, allege that Defendant made defamatory statements other than those allegedly made pursuant to an EEOC, OSHA, or other agency investigation, then his defamation claim must be dismissed. Because the Court cannot conclusively make that determination based on the current allegations, however, Plaintiff will be given the opportunity to re-allege his defamation claim in a second amended complaint.

14

### E. Count V - Intentional Infliction of Emotional Distress

"In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must demonstrate that: "1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused the plaintiff's emotional distress; and 4) plaintiff's emotional distress was severe." *Ward,* 2011 WL 2600511, at *4 (citing *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001)). Plaintiff alleges that:

> Defendant's conduct was illegally motivated because of safety violations and the safety violations discovered by Plaintiff on February 14. 2009 and thereafter, and the illegal decisions by Defendant thereafter, one in "particular" to be denied medical attention after un lawful exposure to bio hazardous waste and, the reckless and malice intent. (2) Defend ant's conduct was illegally, motivated to deter Plaintiff from filing a complaint with the President of Select Medical Corporation, on April 17, 2009.

(Doc. No. 16, ¶ 48.) He also maintains that Defendant "knowingly and willingly cultivated a hostile work environment and intentionally inflicted emotional distress upon the Plaintiff for exercising his rights." (*Id.* at ¶ 48.)

"While the Florida state courts have allowed claims for intentional infliction of emotional distress, conduct which reaches the level of outrageousness that would justify such a claim have rarely, if ever, been found solely on verbal harassment or abuse." *Ward*, 2011 WL 2600511, at *4. The federal courts in Florida "have usually required repeated verbal abuse and repeated physical contact to meet the burden of outrageous conduct" necessary to state a claim for intentional infliction of emotional distress. *Id.* Here, "no facts have been alleged of any physical contact, and further facts, while they may be inappropriate, hardly rise to the level of outrageous conduct which a claim of intentional

15

infliction of emotional distress would require." *See id.; Freese*, 2006 WL 1382111, at *9-10; *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993). Even construing the facts alleged in the light most favorable to Plaintiff, the Court finds that he fails to meet the "higher standard" imposed for maintaining a cause of action for intentional infliction of emotional distress. *See Golden,* 818 F. Supp. at 1499. This claim is due to be dismissed with prejudice.

### F. Counts VI & VII- Negligent Training and Supervision, and Negligent Retention

Under Florida law, "negligent supervision and retention occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicates his unfitness and the employer fails to take further action such as investigation, discharge, or reassignment." *Martinez v. Pavex Corp.,* 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006). "A negligent supervision and retention claim must be based on an injury resulting from a tort which is recognized under common law." *Id.* (citing *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999)).

The Court cannot ascertain the "injury recognized under common law" upon which Plaintiff bases this claim. He cites 29 U.S.C. § 654, which sets forth the "duties of employers and employees" under the Occupational Health and Safety Act. Clearly, this statutory provision cannot serve as the basis for a *common law* injury. For the same reason, any claims that stem from Defendant's alleged violations of Title VII cannot serve as the basis for Plaintiff's negligent retention, supervision, or training claims. *See Freese,* 2006 WL 1382111, at *9.

Elsewhere in the Complaint, and in the letters to Defendant's "CEO" attached to thereto, Plaintiff seemingly contends that he was put in dangerous situations that caused him physical harm because he was forced to engage in activities that were "outside the scope of [his] employment." (*See e.g.,* Doc. No. 16, Ex. C2.)  He also appears to assert that the underlying defamation claim provides the "injury" required to state a cause of action for negligent retention.  (*See* Doc. No. 16, ¶ 56.)  Because the facts Plaintiff alleges in support of Counts VI and VII are neither "short" nor "plain," and because they fail to put Defendant on notice of the claims against it, the Court finds that these counts must be dismissed without prejudice at this time.  *See* Fed. R. Civ. P. 8(a).

### G.    Count VIII - Retaliatory Discharge

In the final count of the Complaint, Plaintiff asserts that Defendant engaged in unlawful employment practices and "[u]nder 29 U.S.C. § 660, Section 11(c) Plaintiff files this claim of retaliatory discharge." (Doc. No. 16, ¶ 60.)  Title 29 U.S.C. § 660 provides:

> (2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

It is unclear whether Plaintiff filed a complaint with the Secretary, as the statute instructs.  *See id.*  Moreover, it appears that this statute does not provide a private right of action.  Instead, as its plain language describes, if the Secretary determines that provisions

of the Occupational Health and Safety Act have been violated, the **Secretary** shall bring an action.  *See id.* (emphasis added); *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976 (5th Cir. 1975)[6] (citing 1970 U.S. Code Cong. & Admin. News, pp. 5177-5241; 29 U.S.C. § 651) ("Nowhere in the language of the Act, its legislative history, or in the statutory declaration of purpose and policy in the Act itself is there the slightest implication that Congress considered OSHA creating a private right of action for violation of its terms."); *Gaspard v. Our Lady of Lourdes Reg'l Med. Ctr.*, No. 08-622, 2009 WL 798818, at *4 (W.D. La. Mar. 25, 2009) ("It is long-established in the Fifth Circuit that Congress did not intend OSHA to create a new action for damages in favor of employees. . . .  Accordingly, plaintiff has no federal cause of action under OSHA.") (internal quotation marks and citations omitted); *Trombetta v. U.S.*, No. 90-1438, 1990 WL 72875, at *4   (E.D. Pa. May 23, 1990).

It is possible that Plaintiff intended to bring his retaliatory discharge claim pursuant to Florida Statute Section 440.205, which prohibits employers from discharging, threatening to discharge, intimidating, or coercing any employee because the employee filed a "valid claim" for compensation.  If so, he would need to prove: "(1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the employee's protected activity." *Ortega v. Eng'g Sys. Tech., Inc.,* 30 So. 3d 525, 528 (Fla. 3d DCA 2010) (citing *Russell v. KSL Hotel Corp.*, 887 So. 2d 372, 379 (Fla. 3d DCA 2004)).  Based on the current Complaint, however, Plaintiff fails to state a cause of action for "retaliatory discharge" because there is no private right of action available under 29 U.S.C. § 660, and Plaintiff has not alleged a state

---

[6] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

law claim under Florida Statutes Chapter 440 as well.

## I.     Federal Rule of Civil Procedure 8

The Court recognizes that Magistrate Judge Kelly's August 2011 Order already warned Plaintiff that he needed to file an amended complaint that comported with the Federal Rules of Civil Procedure ("Federal Rules"), and that failure to do so may result in "dismissal of the case without further warning."  (Doc. No. 8, p. 7.)  Although Plaintiff filed an amended complaint, in which he failed to fully comply with all of the Rules, the Court will give Plaintiff a second, and final, opportunity to amend his complaint.  Plaintiff must allege his claims against Defendant in short, plain statements.  *See* Fed. R. Civ. P. 8(a). Further, he must ensure that the facts applicable to each of his claims are clearly stated and referred to in the appropriate claim.  The Court will no longer guess Plaintiff's intentions and will not scour the Complaint for facts to support each claim.  Additionally, Plaintiff shall specify the legal basis for each cause of action, whether founded in common law or a state or federal statute.  He must provide Defendant with sufficient notice of each claim against it.

The Court advises Plaintiff that if his second amended complaint fails to comply with the Federal Rules and Local Rules and the issues addressed in this Order, the Court may dismiss this action with prejudice.

## CONCLUSION

It is hereby **ORDERED AND ADJUDGED:**

>   1)     Defendant's Motion to Dismiss is **GRANTED** as to Counts I, II, III, IV, VI, VII, and VIII of Plaintiff's Amended Complaint (Doc. No. 17). These claims are dismissed **WITHOUT PREJUDICE;**

2) Defendant's Motion to Dismiss is **GRANTED** as to Count V of Plaintiff's Amended Complaint (Doc. No. 17) **WITH PREJUDICE**. Plaintiff is advised that in light of this ruling, he shall not include a claim for "Intentional Infliction of Emotional Distress" in his second amended complaint, should he choose to file one.

3) Plaintiff is advised that he may file a second amended complaint on or before **Tuesday, May 8, 2012**.  Failure to do so may result in dismissal of this action in its entirety.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 24, 2012.

_____
ROY B. DALTON, JR.
United States District Judge

Copies:
Counsel of Record
*Pro se* Party