# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

WILLIE FOSTER, JR.,

      Plaintiff,

vs.                                                      Case No. 6:11-cv-1234-Orl-37TBS

SELECT MEDICAL CORPORATION,
INC. and SELECT SPECIALTY
HOSPITAL-ORLANDO, INC.

      Defendants.

## ORDER

This cause is before the Court on the following:

1. Plaintiff's Third Amended Title VII Complaint (Doc. 48), filed August 17, 2012;

2. Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint and Incorporated Memorandum of Law (Doc. 49), filed August 30, 2012;

3. Plaintiff's Motion for Leave to Serve Summon [sic] on Third-Party and to Modify Scheduling Order and Motion for an Order Compelling Disclosure or Discovery (Doc. 51),[1] filed September 19, 2012;

4. Defendant Select Medical Corporation, Inc.'s Response to Plaintiff's Motion for Leave to Serve Summon [sic] on Third-Party and to Modify Scheduling Order and Motion for an Order Compelling Disclosure or Discovery (Doc. 52), filed October 1, 2012;

---

[1] To the best of the Court's ability, the Court determines this filing to be responsive to Defendant's motion to dismiss and thus construes it as such. To the extent that it seeks other relief, it is denied.

5. Plaintiff's Motion in Response to Defendant's Motion to Dismiss (Doc. 53), filed October 3, 2012;

6. Plaintiff's Amended Request for Hearing (Doc. 56),[2] filed January 16, 2013;

7. Order Converting Defendant's Motion to Dismiss to Motion for Summary Judgment (Doc. 59), filed January 29, 2013;

8. Defendant Select Medical Corporation's Supplement to Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 60), filed February 1, 2013; and

9. Plaintiff's Consolidated Motion in Opposition to Defendant's Converted Motion for Summary Judgement [sic] (Doc. 61), filed February 14, 2013.

Upon consideration, the Court hereby grants summary judgment in favor of Defendant.

## BACKGROUND

Plaintiff is appearing *pro se* in this action. His Third Amended Complaint and various other filings are not models of clarity, but the Court gleans the facts as follows and construes them in the light most favorable to Plaintiff.

Plaintiff is an African-American male who is Buddhist. (Doc. 48, ¶¶ 4, 20.) In July 2008, Plaintiff interviewed for a job as a floor technician at Defendant's hospital. (*Id.* ¶ 4; Doc. 16-4, p. 1.) During the interview, Plaintiff felt uncomfortable because Mary Calixtro, the supervisor, professed her "strong Christian views and held her [B]ible." (Doc. 48, ¶ 4.) However, Plaintiff did not state that he was Buddhist "for fear of not being hired." (*Id.* ¶ 5.) Plaintiff was hired soon after. (*Id.*)

In January 2009, Plaintiff complained to Marinella Castroman, Defendant's

---

[2] As the Court has already held a hearing on Plaintiff's claims, this request is due to be denied.

regional CEO, and Angela King, Defendant's regional HR coordinator, that he felt that he was being asked to perform tasks outside his job description. (Doc. 60-1, Castroman Aff., p. 5.) In particular, Plaintiff felt that he should not have to empty the waste bins. (*Id.*) Ms. Castroman explained to Plaintiff that emptying the waste bins was part of Plaintiff's job in addition to cleaning the floors, and told him that he was not being asked to do anything that he was not trained or qualified to do. (*Id.*)

In February 2009, Plaintiff informed Ms. Calixtro that he believed that he had come into contact with contaminated material from a waste bin. (Doc. 48, ¶ 7.) Plaintiff avers that Ms. Calixtro did not investigate that incident. (*Id.* ¶ 8.)

Plaintiff was disciplined on February 24, 2009, for unacceptable attendance. (Doc. 16-4, p. 3.)

On March 9, 2009, Plaintiff again complained to Ms. Castroman in the form of a letter. (Doc. 48, ¶ 9; Doc. 16-4, p. 4.) The crux of his complaint once more was that he felt he was being asked to perform duties outside of what he considered to be in his job description. (Doc. 16-4, p. 4.) While he mentioned "disparate treatment," it appeared to be in the context of housekeepers versus floor technicians and floor technicians being asked to do housekeeping-type tasks but not vice versa. (*Id.*)

However, Plaintiff followed up with another letter on March 14, 2009, in which he complained that Ms. Calixtro prayed for and preached to him. (*Id.* at 7.) He appeared to be particularly concerned about an incident involving a troubled coworker, Willie Mae Johnson, which culminated in Ms. Johnson being arrested on hospital property. (*Id.*) After that incident, Ms. Calixtro stated that the staff should pray for Ms. Johnson's well-being—Plaintiff apparently was offended that Ms. Calixtro was "instructing" him to pray. (*Id.* at 7–8; Doc. 48, ¶ 16.) Plaintiff also reiterated his concerns about having to work

3

outside of what he considered to be the scope of his job. (Doc. 16-4, p. 6–7.) Ms. Castroman noted that Plaintiff's demeanor at work changed considerably after Ms. Johnson's termination. (Doc. 60-1, Castroman Aff., p. 6.)

In response to Plaintiff's concerns, Ms. Castroman investigated and interviewed other employees. (Doc. 35-2, p. 6.) The other employees also thought that Ms. Calixtro "talked too much about her religion in the work place," and the general consensus was that Ms. Calixtro was not a very good supervisor. (*Id.*) However, none of the other employees expressed concerns about discrimination. (*Id.*) As a result of the investigation, Ms. Calixtro was suspended and removed from the supervisor position. (*Id.* at 7.) The employees were thereafter directed to report directly to John Prusaczyk, the new supervisor. (*Id.*) When Ms. Castroman followed up with Plaintiff about her investigation and the result, he stated that he was satisfied with the actions taken. (*Id.*) However, he noted that Ms. Calixtro still kept a Bible on her desk, though he stated that she did not open or read it while in the workplace. (*Id.*) Ms. Castroman told Plaintiff to continue to follow up with her if he had any additional concerns. (*Id.*)

Sometime in March 2009, Plaintiff left work early without permission. (Doc. 60-1, Castroman Aff., p. 6; Doc. 60-1, King Aff., pp. 8–9.) Ms. King and Mr. Prusaczyk cautioned him that leaving work without permission was grounds for termination. (Doc. 60-1, King Aff., p. 9.)

On April 17, 2009, Mr. Prusaczyk received a letter from Plaintiff raising concerns similar to those Ms. Castroman had previously addressed. (Doc. 16-4, p. 9; Doc. 60-1, Castroman Aff., p. 6; Doc. 60-1, Kurmakov Aff., p. 1.) Mr. Prusaczyk passed those concerns along to Defendant's regional HR director, Alex Kurmakov, who came to the hospital to investigate. (Doc. 60-1, Kurmakov Aff., p. 1.) Mr. Kurmakov determined that

Plaintiff's safety concerns, primarily that he felt he was coming into contact with contaminated material, were unfounded. (*Id.*) Mr. Kurmakov found that Plaintiff's job description, including emptying waste bins, had been explained to him multiple times, and that Plaintiff had been sufficiently trained as to how to safely handle such material. (*Id.* at 1–2; Doc. 60-1, King Aff., p. 8.)

On April 18, 2009, Plaintiff again left work early without permission. (Doc. 60-1, King Aff., p. 9.) Plaintiff does not appear to dispute this allegation, stating that he "informed management of his intentions to leave work" that day because "[h]e did not feel safe." (Doc. 61, ¶ 10.)

On April 22, 2009, Mr. Kurmakov learned that Plaintiff had left work early without permission a few days before. (Doc. 60-1, Kurmakov Aff., p. 3.) Mr. Kurmakov telephoned Plaintiff to relay the results of his investigation into Plaintiff's safety concerns and to terminate Plaintiff for leaving work early. (*Id.*) Kim Grant, Defendant's regional director of clinical services, was present with Plaintiff and they listened to Mr. Kurmakov on speakerphone. (Doc. 60-1, Grant Aff., p. 10.) Plaintiff attempted to record the conversation, which Mr. Kurmakov disallowed. (Doc. 60-1, Grant Aff., p. 10.) Mr. Kurmakov informed Plaintiff that he was fired. (*Id.*) Plaintiff avers that Mr. Kurmakov then made "unfair and untrue statements about [Plaintiff's] character so [Plaintiff] decided to end the conversation." (Doc. 48, ¶ 19.) As Plaintiff was leaving the office, Ms. Grant avers that Plaintiff said he would "bring [them] down" by "contacting every government entity he could think of." (Doc. 60-1, Grant Aff., p. 11.) Mr. Prusaczyk then escorted Plaintiff out of the building. (Doc. 48, ¶ 14.) The following day, Plaintiff made a complaint to the Orlando Office of Human Relations. (Doc. 35-2, pp. 8–9 (records noting that the complaint was made on April 23 and signed on April 24).)

After several unsuccessful rounds of attempting to state a claim, Plaintiff's Third Amended Complaint brings three counts against Defendant: (1) race, sex, and religious discrimination; (2) retaliation; and (3) defamation. (Doc. 48, pp. 9–11.) Defendant moved to dismiss the claims. (Doc. 49.) Subsequently, Defendant moved to convert the motion to dismiss to one for summary judgment (Doc. 58), which the Court granted (Doc. 59). Plaintiff filed evidence in response. (Doc. 61.) This matter is now ripe for the Court's adjudication.

## STANDARDS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries its burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

**DISCUSSION**

At the outset, the Court notes that it has given Plaintiff many opportunities to attempt to state his claims. (*See* Doc. 1, Complaint; Doc. 15, Amended Complaint; Doc. 35, Second Amended Complaint; Doc. 48, Third Amended Complaint.) The Court has shown a great deal of leniency to Plaintiff because he is appearing *pro se*, and it has given Plaintiff detailed and repeated instructions as to how to correct the pleading deficiencies. The Court even held a hearing on Defendant's motion to dismiss Plaintiff's last complaint to give Plaintiff a chance to more fully explain his claims. (Doc. 46.) Nonetheless, even construing all of the facts in his favor, Plaintiff still fails to properly establish any of his three remaining claims. Indeed, contrary to the Court's express directions, Plaintiff's Third Amended Complaint is virtually identical to his deficient Second Amended Complaint, and simply adds more legal jargon rather than simple factual allegations. Therefore, the Court finds that Plaintiff's claims are due to be dismissed with prejudice and that summary judgment must be granted for Defendant, for the reasons set forth below.

**I.   Discrimination**

It is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

**a.   Disparate Treatment**

The elements of discrimination based on a disparate treatment theory are: (1) Plaintiff is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or treated less favorably than a similarly situated comparator outside

his protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). Plaintiff and the comparator must be "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id.*

In dismissing his previous disparate treatment claim, the Court cautioned Plaintiff that he had not sufficiently alleged a similarly situated comparator. (Doc. 34, pp. 7–8.) Plaintiff has not corrected that deficiency. He does not identify the race, sex, or religion of any other employee who was treated more favorably than himself.

While Plaintiff asserts that he was the only male to be forced to perform jobs that he contends were outside the scope of his employment (Doc. 48, ¶ 15), he points to no specific woman who was more favorably treated, nor does he allege what that woman's job description was as compared to his own. Plaintiff also alleges that he was replaced by a person outside his protected class (*id.* ¶ 22), but does not state by whom he was replaced or what that person's race, sex, or religion was.

These conclusory statements are not enough to form the basis of a disparate treatment claim, let alone to get such a claim past the summary judgment stage. Accordingly, the Court grants summary judgment in favor of Defendant on this claim.

    **b.**    **Hostile Work Environment**

The elements of discrimination based on a hostile work environment theory are: (1) Plaintiff is a member of a protected class; (2) he was subject to unwelcome conduct; (3) the conduct was based on his protected class; (4) the conduct was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment; and (5) a basis for holding his employer liable. *Reeves v.*

*C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). The conduct must be both subjectively and objectively hostile. *Id.* at 809.

Plaintiff alleges that he was subject to "racist and sexist insults," but adduces no facts supporting that allegation. (Doc. 48, ¶ 9.) He also states that Ms. Calixtro "on occassion's [sic] compare[d] [him] to[] Freddie[] and[] someone she worked with at [a] past employer" and "would make reference to [his] ethnic background, [his] ear ring, the way [he] dress[ed] and . . . race, religion and the []Presidential campaign to excess." (Doc. 61-8, Foster Aff., p. 1.) Without knowing the content of those statements or the context in which they were made, the Court can only determine that these bare allegations, taken together, do not rise to the level of an objectively hostile workplace. *See Hall v. DeKalb Cnty. Gov't*, No. 12-10101, 2013 WL 104810, at *9 (11th Cir. Jan. 9, 2013) ("Although [Plaintiffs] allege that they were subjected to years of daily harassment, they fail to provide any specific examples of racial harassment to support their claim. Their conclusory, unsupported allegations are insufficient to survive a motion for summary judgment."). Furthermore, as Plaintiff himself admits that Ms. Calixtro's comments were occasional as opposed to pervasive, that also cuts against a finding of objective hostility. *See id.* (noting that the environment is only hostile where the workplace is "permeated with discriminatory intimidation, ridicule and insult, not where there is the mere utterance of an epithet" (citation and internal quotation marks omitted)); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) (finding that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" is generally not enough because the environment must be so persistently hostile as to alter the conditions of employment); *cf. Walker v. Ford Motor Co.*, 684 F.2d 1355, 1358 (11th Cir. 1982) (upholding a finding of an objectively hostile environment

where the employer's use of unmistakably derogatory racial slurs was "repeated, continuous, and prolonged"). As to religion, while Plaintiff alleges that Ms. Calixtro's having a Bible on her desk and professing her strong faith in Christianity made him uncomfortable, he also specifically states that he did not tell Ms. Calixtro that he was Buddhist—meaning that he could not be harassed on those grounds as Ms. Calixtro did not even know his religion. (Doc. 61-8, Foster Aff., p. 1; Doc. 48, ¶ 5.)

As this Court noted before (Doc. 34, pp. 9–10), Plaintiff's allegations do not make out a hostile workplace environment claim. Thus, this claim is due to be dismissed with prejudice.

**II.    Retaliation**

The elements of retaliation are: (1) Plaintiff engaged in protected activity; (2) his employer took adverse action against him; and (3) there is a causal connection between the protected activity and the adverse action. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998).

Plaintiff was terminated on April 22, 2009. (Doc. 61-8, Foster Aff., p. 3.) The record evidence shows that Plaintiff made a complaint to the Orlando Office of Human Relations on April 23, 2009, and signed it on April 24, 2009. (Doc. 35-2, pp. 8–9.) As the HR complaint took place *after* Plaintiff's termination, this activity could not possibly have caused the termination.

The Court now turns to Plaintiff's March 14, 2009 letter to Ms. Castroman. (Doc. 16-4, p. 7.) For that complaint to be considered statutorily protected activity, Plaintiff must have had a "good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Techs.*, 103 F.3d 956, 959 (11th Cir. 1997). That belief must be both subjectively and objectively reasonable. *Id.* at 960.

It is not objectively reasonable for Plaintiff to have believed that he was being religiously discriminated against because Ms. Calixtro stated that they should pray for an emotionally troubled coworker. This finding is supported by the comments of other staff members in response to Ms. Castroman's investigation, who stated that while they also thought Ms. Calixtro talked about her religion too much, none of them felt they were discriminated against. (Doc. 35-2, p. 6.) Rather, the other employees all thought that Ms. Calixtro was a disorganized supervisor, which is why she was removed from that position. (*Id.* at 6–7.) Thus, the Court finds that Plaintiff has not made out a *prima facie* case of retaliation because he has not established that the letter constituted protected activity.

Even if Plaintiff had done so, Defendant has met its initial burden on summary judgment by demonstrating an absence of evidence supporting Plaintiff's case. *See Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The record shows that in the months leading up to Plaintiff's termination, he was cautioned multiple times about absences and leaving work early. (Doc. 16-4, p. 3; Doc. 60-1, King Aff., p. 9.) Plaintiff does not dispute that he left work early without permission four days before he was terminated, though he disputes why he did so. (Doc. 61, ¶ 10.) This evidence establishes that Defendant had legitimate reasons for firing Plaintiff: walking off the job after having been warned previously about the same behavior.[3]

Thus, the burden shifts back to Plaintiff to present affirmative evidence of a genuine issue of fact—that is, that the proffered reason for Plaintiff's firing was

---

[3] While the Court does not consider it at all dispositive, the Court notes that the EEOC's investigation found that "[t]he evidence showed that [Plaintiff was] terminated for failing to follow the directives to perform [his] job and for walking off the job after being warned previously about the same violation. The evidence showed that [Defendant's] actions were not based on discriminatory reasons." (Doc. 16-2, p. 2.)

11

pretextual and that Plaintiff was actually terminated due to his complaint. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006); *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). Plaintiff has not carried this burden. The record surrounding the incident with the letter and subsequent investigation of Ms. Calixtro suggests that Defendant took Plaintiff's concerns seriously and addressed them adequately.[4] Ms. Calixtro was removed from a supervisory position because she was overly disorganized. (Doc. 35-2, pp. 6–7.)

Following this complaint, more than a month went by without incident; then Plaintiff defied his supervisors and went home early without permission, after developing a pattern of unexplained, impermissible absences; four days later, he was fired. The temporal proximity between leaving work early yet again after being warned about the same violation and the termination demonstrates a causal connection. To draw such a connection between the complaint about Ms. Calixtro and the firing would be simply implausible—particularly because other employees also complained about Ms. Calixtro without being terminated, and Ms. Calixtro was in fact removed as a supervisor as a result. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) ("A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'").

Accordingly, the Court has found that Plaintiff has not made out a *prima facie* case of retaliation, and even if he had, the evidence demonstrates that Defendant had

---

[4] While the Court does not consider it at all determinative, the Court notes that OSHA's investigation found that "[Plaintiff's] concerns were being addressed by the [Defendant] and were not the reason for [Plaintiff's] termination. Documentation supports the [Defendant's] contention that [Plaintiff's] termination was for [Plaintiff's] violation of the company's attendance policy." (Doc. 16-3, p. 8.)

legitimate, non-pretextual reasons for terminating Plaintiff. No reasonable jury looking at this record would find in favor of Plaintiff. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001) ("In light of the ample legitimate reasons for the termination decision proffered by the [Defendant], the truth of which was never effectively challenged, and in light of the fact that [the Plaintiff] adduced virtually no evidence of discrimination, we cannot conclude that a reasonable jury could find for the Plaintiff . . . ."); *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (affirming summary judgment in favor of an employer where the employer met its burden of demonstrating a legitimate reason for the adverse action, and virtually all the employee offered to show pretext was the close temporal proximity between her complaint and the adverse action). Thus, summary judgment on this claim must be granted to Defendant.

### III. Defamation

The elements of defamation are: (1) publication of the statement; (2) falsity; (3) negligence as to the statement's falsity; (4) actual damages; and (5) the statement must be defamatory. *Ward v. Casual Rest. Concepts Inc.*, No. 8:10-cv-2640, 2011 WL 2600511, at *6 (M.D. Fla. June 29, 2011) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

Plaintiff alleged that defamatory statements about him were "published to a third party."[5] (Doc. 48, p. 11.) However, Plaintiff fails to particularly identify the speaker or content of the allegedly defamatory statements, to whom they were published, how they were negligent, and so on.

---

[5] To the words "third party," Plaintiff footnoted the following: "Indrawatie Mohan, John Prusaczyk, Marinella Castroman, Alex Kurmakov, Kim Grant, Angela King and possibl[y] other[s]." (Doc. 48, p. 12 n.1.) It is entirely unclear whether Plaintiff is alleging that these people made the statements or were the ones to whom the statements were made.

Furthermore, the only statements to which Plaintiff possibly refers are those apparently made to state and federal agencies[6] regarding the circumstances surrounding Plaintiff's termination. (*Id.* ¶¶ 1, 18.) "[D]efamatory words published during the course of a judicial or quasi-judicial proceeding are absolutely privileged if they are connected with, or relevant or material to, the cause at hand or subject of inquiry." *Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001); *see also Stucchio v. Tincher*, 726 So. 2d 372, 374 (Fla. 5th DCA 1999). Absolute immunity applies in many "professional, licensing, and administrative proceedings," such as worker's compensation, unemployment compensation, labor grievances, and EEOC investigations. *See Feldman v. Glucroft*, 522 So. 2d 798, 801 (Fla. 1988) (collecting cases). As the Court understands Plaintiff to complain of statements made during the course of an OSHA, EEOC, or unemployment claim investigation (Doc. 48, ¶¶ 1, 18), those statements are absolutely privileged. *See Bell v. Gellert*, 469 So. 2d 141, 142 (Fla. 3d DCA 1985) (holding that statements arising out of a labor grievance complaint are absolutely privileged); *Gandy*, 787 So. 2d at 119 (holding that statements made during an EEOC inquiry were absolutely privileged); *Greene v. Hoiriis*, 103 So. 2d 226, 228 (Fla. 3d DCA 1958) (holding that statements made in connection with unemployment proceedings are absolutely privileged).

Plaintiff was warned in the Court's last order dismissing his claims that "if [Plaintiff] realleges a Defamation claim based solely on privileged statements, the Court will summarily dismiss that claim with prejudice." (Doc. 47, p. 2.) Plaintiff has not

---

[6] Plaintiff points to investigations made by "the City of Orlando Office of Human Relations, Equal Employment Opportunity Commission, Occupational Safety and Health Administration," and "the State of Florida unemployment claims program." (Doc. 48, ¶¶ 1, 18.)

14

remedied this deficiency; thus, his defamation claim is due to be dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint and Incorporated Memorandum of Law (Doc. 49), as converted to a Motion for Summary Judgment (Doc. 59), is **GRANTED**.

2. Plaintiff's Motion for Leave to Serve Summon [sic] on Third-Party and to Modify Scheduling Order and Motion for an Order Compelling Disclosure or Discovery (Doc. 51) and Plaintiff's Amended Request for Hearing (Doc. 56) are **DENIED**.

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendants, to terminate all pending deadlines, and to close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 28, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

*Pro Se* Party